WILLIAM AND DORIS WELLS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 86335. Filed April 15, 1963

William Wells, pro se.
*Robert D. Whoriskey*, for the respondent.

46

OPINION

OPPER, *Judge:* The parties are in disagreement in at least two respects as to whether payments to petitioner by the Veterans' Admin-

istration are, under section 117, I.R.C. 1954, excludable from her income as a fellowship.[1] Petitioner contends that we need never reach the pre-1954 test of gift versus compensation, see *George Winchester Stone, Jr.*, 23 T.C. 254 (1954), in view of section 117(b), which is specific and by its terms [2] applies to petitioner's situation.

There may be force to this argument. The record is clear that the "payment" in question must, in order to support respondent's position, be viewed as "for * * * other services in the nature of part-time employment required as a condition to receiving * * * the fellowship grant." But, if so, it is equally clear that the "services are required of all candidates * * * as a condition to receiving such degree." This varies from the circumstances in *Frank Thomas Bachmura*, 32 T.C. 1117 (1959), where the taxpayer was not a degree candidate. The outcome would rather be governed by the statement in *Chandler P. Bhalla*, 35 T.C. 13, 17 (1960), "that the present situation falls directly within the letter, the spirit, and the intent of the * * * last sentence of section 117(b)(1); and that petitioner is entitled to exclude his stipend from gross income."

This approach is fortified by the legislative purpose to enact a "clear-cut method of distinguishing between taxable and nontaxable grants" [3] which the case-by-case factual review of every situation will not accomplish. But in the view we take of the present record, we need not pass upon the question of law thus presented.

Even if we assume that primary purpose is the initial criterion, see *Frank Thomas Bachmura*, *supra* at 1125–1126, our findings have disposed of this factual issue. In *Chander P. Bhalla*, *supra* at 17, we agreed with respondent's conclusion that:

The problem is usually somewhat difficult of solution because * * * in most of the situations there is a dual or mutual benefit involved. *The question * * * must be resolved on a factual basis and depends upon the facts and circumstances in each particular case.*

---

[1] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.
  (a). GENERAL RULE.—In the case of an individual, gross income does not include—
    (1) any amount received—
      (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or
      (B) as a fellowship grant,
  including the value of contributed services and accommodations * * *

[2] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.
  (b) LIMITATIONS.—
    (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

[3] H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 16 (1954).

The Veterans' Administration announced a dual purpose for its training program: "[T]o furnish a continuing source of qualified staff psychologists for the Department of Medicine and Surgery and to provide needed services for which psychological technicians would otherwise have to be employed." One of these stated purposes—to provide services—may perhaps be for the primary benefit of the grantor.[4] But the other could not be attained without first assuring that prospective staff members be qualified, that is, adequately trained.[5] Petitioner and others participating in the program are not bound in any way to join the Veterans' Administration staff in the future. Looked at realistically, the purpose is to train petitioner and others to be qualified clinical psychologists with nothing more than the hope that they may become associated with the Veterans' Administration upon graduation, a situation comparable to any research, teaching, or training fellowship.

And the program, as planned and executed as to first-year trainees, involved far more concern with learning and training than with the performance of services of value to the Veterans' Administration. Approximately one-third of the time in the first-year schedule was devoted to seminars of a theoretical nature. Much of the remaining time was spent in observation and counseling with training supervisors. Those services which were performed—testing and some psychotherapy—were of limited usefulness to the hospital and were conducted only under close supervision by staff psychologists. See Rev. Rul. 57–560, 1957–2 C.B. 108. These services did not appreciably lighten the workload of the staff, since no reduction occurred in the number of regular employees and staff members apparently could have accomplished the same tasks in little more time than they spent supervising and counseling first-year trainees. We have accordingly found that the primary purpose of the first-year training program in which petitioner was enrolled was to aid in training students as clinical psychologists and that the first-year trainees were neither expected nor required to perform services of any substantial value to the Veterans' Administration, nor were they bound to do so in the future.

---

[4] But respondent's own regulations make clear that "the fact that * * * the results of his studies * * * may be of some incidental benefit to the grantor shall [not], of itself, be considered to destroy the essential character of such amount as a * * * fellowship grant." Sec. 1.117–4, Income Tax Regs.

[5] As respondent himself phrases it in his brief: "To qualify for that [Ph. D.] degree, the university required each candidate to spend * * * two years part-time receiving supervised clinical training in a mental hospital * * *. Trainees who were appointed to Montrose, were concerned with learning how to give the service which the hospital offered to its patients. They learned by doing * * *."

And we have found as a fact in respondent's own language that "The purpose of having a pre-doctoral student appointed to a hospital such as Montrose *was to train him* to give the type of service which the hospital offered." (Emphasis added.)

Because the payments to petitioner come from a governmental source, the argument is made that they must be compensatory and hence includable in income. After emphasizing the provisions of the statute under which petitioner received her payment,[6] respondent contrasts it with another section of the law which he presumably regards as primarily educational in purpose without apparently recognizing that this is as much an "employment" provision as the other.[7]

And, again, relying on a broad and general regulation,[8] he proceeds to the conclusion that if any services are rendered which are "subject to the direction or supervision of the grantor," the payment cannot be a scholarship, thereby, and contrary to express statutory provision, neatly eliminating all university research fellowships which are conducted under university direction and supervision.

Respondent's argument does an injustice to his own regulations. The portion cited is applicable to all situations and not merely to those in which a candidate for a degree is performing required services. But the language of section 117 and its legislative history [9] make it clear that amounts received as a scholarship or fellowship grant may be compensatory in character and may still be excludable from income. See *Chander P. Bhalla, supra.* Respondent's regulations, viewed in their entirety, reflect this. The regulation cited by respondent, in order to give meaning to it in its context and not to be in contravention of the statutory purpose, must be read as referring to an amount received primarily for the purpose of rendering services or performing supervised activities as contrasted with furthering the education and training of the recipient in his individual capacity. Cf. *Frank Thomas Bachmura, supra.* We think petitioner has brought herself clearly within the factual dimensions of the primary purpose test.

*Decision will be entered for the petitioner.*

---

[6] 72 Stat. 1247 (1958), 38 U.S.C., sec. 4114(a).

"The Administrator, upon the recommendation of the Chief Medical Director, may employ, without regard to the Classification Act of 1949, physicians, dentists, and nurses, on a temporary full-time, part-time, or fee basis; and dietitians, social workers, librarians, and such other professional, clerical, technical, and unskilled personnel * * * on a temporary full-time or part-time basis at such rates of pay as he may prescribe. * * *"

[7] 72 Stat. 1248 (1958), 38 U.S.C., sec. 4114(b).

"The Administrator shall have authority to establish residencies and internships; to appoint qualified persons to such positions without regard to civil-service or classification laws, rules, or regulations; and to prescribe the conditions *of such employment,* including necessary training, and the customary amount and *terms of pay during the period of such employment* and training." (Emphasis added.)

[8] Sec. 1.117–4(c), Income Tax Regs.

[9] H. Rept. No. 1337, *supra* at pp. 17, A37.

S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 17, 188 (1954).