John M. Gullo v. Commissioner.
Gullo v. Commissioner
Docket No. 6881-70 "SC".
United States Tax Court
T.C. Memo 1971-331; 1971 Tax Ct. Memo LEXIS 2; 30 T.C.M. (CCH) 1434; T.C.M. (RIA) 71331; December 30, 1971, Filed John M. Gullo, pro se, 1901 Ave. of thestars, Los Angeles, Calif.Tom G. Parrott, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1963 in the amount of $514.44. The only issue for decision is whether the amount of $2,680 received by petitioner during 1963 while serving as a psychology intern at Jacksonville State Hospital constitutes a scholarship or fellowship grant which is excludable from gross income under section 117(a), I.R.C. 1954, [1] or compensation for services rendered to the hospital. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner *4 at the time of filing his petition in this case, resided in Jacksonville, Illinois. He filed an individual income tax return for the calendar year 1963 with the district director of internal revenue at Springfield, Illinois. Petitioner received a Bachelor of Arts Degree with a major in "Pre-Med" and a minor in Psychology from MacMurray College, Jacksonville, Illinois in June of 1961. In the summer of 1961, he was admitted to Bradley University, Peoria, Illinois as a graduate student in the program leading to a Master's Degree in Psychology. A Master's Degree in Psychology was awarded by Bradley University upon the completion of 30 hours of course work, or at the election of the student, 3 less hours of course work and the satisfactory completion of a thesis. In July of 1962 petitioner completed all course work and the comprehensive examinations for his Master's Degree in Psychology at Bradley University. He elected to write a thesis in lieu of the 3 hours course work and he completed this thesis in the fall of 1963. All of the data used in petitioner's master thesis was collected at Bradley University. He could have received his master's degree at the end of the 1961-1962 academic *5 year if he had not elected to write a thesis in lieu of the course work. Petitioner received his Master's Degree in Psychology from Bradley University in absentia, in January of 1964. On August 29, 1962, petitioner filed an application for employment as a psychology intern at Jacksonville State Hospital (hereinafter referred to as Jacksonville State), with the Department of Personnel for the State of Illinois. The only application available for use in applying for this position was the ordinary type of employment application which was used by any person applying for any type position with the Department of Mental Health of Illinois, and it was this form of application which petitioner used in applying to become a psychology intern at Jacksonville State. Petitioner served as a psychology intern from September 4, 1962, to September 5, 1963, at Jacksonville State. During the period September 5, 1963, to July 1, 1964, 1435 petitioner served as a Psychologist I at Jacksonville State. Subsequently petitioner served as a staff psychologist at Jacksonville State and other mental health facilities in the State of Illinois. The description of the work of a psychology intern at Jacksonville *6 State provided, with respect to features of work and examples of work done by such an intern as follows: DISTINGUISHING FEATURES OF WORK: Under direct supervision, for a period not to exceed two years, performs psychological work in the practicum training program involving the application, scoring and interpretation of psychological test techniques, together with clinical evaluation of patients, inmate or juvenile ward subjects followed by preparation of psychological reports and presentation of these reports at training seminars, diagnostic staff meetings, staff improvement and other conferences. ILLUSTRATIVE EXAMPLES OF WORK: 1. Administers standard intelligence, performance, mental deterioration and social maturity tests to residents of a State hospital, clinic school or penitentiary; scores and interprets test results. 2. Gives routine intelligence and personality tests to employee applicants. 3. Administers tests to special cases referred by social agencies and other sources. 4. Interviews patients and inmates for pertinent psychological data. 5. Assists in the collection and evaluation of data for psychological research projects. 6. Performs some psychotherapeutic *7 treatment under immediate supervision of a qualified physician. 7. Makes written and oral reports of test findings. 8. May do research under institution guidance. 9. Attends departmental and professional meetings. 10. Performs other duties as required or assigned. Petitioner, while a psychology intern at Jacksonville State, did work in all of the various areas listed in the description of the duties of a psychology intern, except the giving of intelligence and personality tests to employee applicants and the administration of tests to special cases referred by social agencies and other sources. During a typical workday at Jacksonville State in 1963, a psychology intern would report at 8:30 a.m., having an initial meeting of one-half hour with his direct supervisor who might suggest to him that a patient needed testing on that particular day. He would perform psychological testing on the patient which might take from 1 to 4 hours. In the latter part of the day he would begin analyzing test results preparatory to presenting that data to the supervisor and discussing the data with the supervisor. On some days, in lieu of analyzing the data, he might immediately participate in *8 a group therapy session or see an individual in the beginning of an individual therapy process. The specific duties of psychology interns were changed from day to day. The duties of a psychology intern were similar to the duties of a Psychologist I at Jacksonville State during the year 1963. However, the Psychologist I performed his duties with less supervision than the supervision given to a psychology intern. A Psychologist I was a regular member of the staff at Jacksonville State in 1963. Psychology interns had a basic workweek during 1963 at Jacksonville State of 40 hours. This was the same basic workweek required of all employees of Jacksonville State during that year. During the year 1963 psychology interns were required to account for their time to a timekeeper who reported for payroll purposes whether the intern was on duty for the required workweek. All employees at Jacksonville State were required to account for their time to the same timekeeper for the same purpose. While serving as a psychology intern at Jacksonville State during 1963, petitioner was compensated in accordance with the pay plan which had been established by the State of Illinois for all individuals *9 employed by the State as psychology interns. Petitioner was paid $335 per month while serving as a psychology intern at Jacksonville State which is the same amount paid all psychology interns in the State of Illinois at that time. There was no variance in the amount received by psychology interns in the State of Illinois during 1963 because of the particular individual's financial needs or marital status. Psychology interns at Jacksonville State were paid in 1963 on a biweekly basis which was the same basis on which all employees at the hospital were paid. Payments to psychology interns at Jacksonville State during the year 1963 were made from the General Revenue Funds of the State of Illinois, which was the same 1436 source of funds from which all employees of Jacksonville State were paid. Federal income tax was withheld by Jacksonville State from the amount paid to psychology interns during the year 1963. Although psychology interns at Jacksonville State were not entitled to the job protection provisions applicable to Civil Service employees, if they were enrolled in a program of 6 months or more duration, they were entitled to the following benefits: a. Continuous service. *10 b. Emergency absence credits. c. Vacation credits. d. Educational leaves. e. Special leaves without pay. f. Jury duty leave. g. Leave for annual military service. h. Holidays as prescribed by the Illinois Department of Personnel rules. i. Accumulated overtime. j. Maternity leave. k. Military leave. The personnel office of the Illinois Department of Mental Health considered psychology interns employed during 1963 by the State of Illinois to be employees of the State. Jacksonville State is a public mental hospital and any citizen residing in the area it services is eligible for admission and treatment. During 1963 its official bed capacity was 2,346 but because of the demands made on the hospital the actual number of beds maintained at the hospital was 3,593, and the average daily bed census during this year was 3,004. There is a monthly fee which represents the average cost of care of patients in all institutions in the State of Illinois which is required of patients who are able to pay the charge or have a responsible relative able to pay. During 1963 there were 12 physicians assigned to clinical teaching and administrative positions at Jacksonville State. *11 The other staff members, during 1963, included 10 psyschologists, 54 professional nurses, 13 student nurses, and 4 psychology interns. The primary purpose of Jacksonville State was, during the year here in issue, the care and treatment of mentally ill patients. Psychology interns worked with patients at Jacksonville State in an effort to assist them in recovering sufficiently to be able to leave the institution as soon as possible. Jacksonville State derived benefits from the services performed by psychology interns during 1963, the most important benefit derived by the hospital from these services being from the services rendered by the psychology interns to patients of the hospital. The psychological testing at the beginning of a treatment of a patient is a normal procedure in a mental hospital. All of the psychology interns at Jacksonville State during 1963 including petitioner administered psychology tests and conducted interviews with patients in an effort to gather pertinent psychological data. After the psychology intern completed his testing and interviewing program, he would prepare a written report of the results which was submitted to his supervisor and generally placed *12 in the file of the individual patient as a part of the medical record of that patient. In a rare instance, such data might not be included in the patient's file. Generally, a psychology intern was expected to test on the average of two patients per week and submit reports with respect to his testing, whereas a staff psychologist was generally expected to test on an average of four patients per week and submit reports with respect to these tests. After a psychology intern had been at the hospital for several months, the degree of supervision of his work would diminish, the degree of such diminishing supervision depending on the expertise with which the intern progressed in his work. The psychology intern program at Jacksonville State provided a source of supply for future staff psychologists at that hospital. During 1963 Jacksonville State had difficulty in hiring a sufficient number of competent psychologists. In many instances the individual who completed the psychology internship at Jacksonville State remained at the hospital as a staff psychologist or accepted employment as a staff psychologist at some other mental hospital operated by the State of Illinois. During the year *13 1963 psychology interns were not free to pursue a research project of their own choosing but were required to pursue a research project selected in collaboration with their supervisor after having obtained the prior approval of their supervisor to pursue the project. Only projects which had a relationship to the work or operation of Jacksonville State would be approved. Petitioner received no academic credit with respect to his psychology internship at Jacksonville State during 1963. Bradley 1437 University did not require a psychology internship as a condition for receiving a Master's Degree in Psychology, and petitioner's participation in the psychology internship program at Jacksonville State in 1963 was in no way required by or related to the Master's Degree in Psychology which he received from Bradley University. Although the psychology intern program was established in Illinois as a training program for future pschologists, the psychology intern program at Jacksonville State during 1963 was closely related to providing for the care and treatment of mentally ill patients in the hospital. One of the primary purposes of the intern program was to benefit such patients through *14 their contacts with the psychology interns. The rendering of services to the patients of Jacksonville State was an important part of the intern training program. Petitioner filed a form 1040A, U.S. Individual Income Tax Return (less than $10,000 total income), for the calendar year 1963 and included in the amounts of wages or other income the amounts he received as a psychology intern at Jacksonville State. Subsequently, petitioner filed a claim for refund in the amount of $514.44, the claimed overpayment resulting from excluding from the salary and wages received the $2,680 which he received in 1963 from Jacksonville State. On May 24, 1965, petitioner's claim was allowed and the $514.44 plus interest in the amount of $34.28 was refunded to petitioner. Respondent in his notice of deficiency recomputed petitioner's income on the basis of including in his taxable income the $2,680 which petitioner received from Jacksonville State with the explanation that the amount paid petitioner as a psychology intern at Jacksonville State "is not income which is excludable from taxation as provided for in section 117, Internal Revenue Code of 1954." Opinion *15 Section 117[2] provides for the exclusion from gross income of an individual of any amount received as a scholarship at an educational institution or as a fellowship grant. Subsection (a)(1)(A) concerns amounts received "as a scholarship at an educational institution" and subsection (b)(1) of section 117 deals with grants to individuals who are candidates for a degree. It is not clear whether petitioner considers the provisions of section 117(a)(1)(A) and (b)(1) to be applicable to him. In his brief, after reciting that his work at Jacksonville State was in no way connected with his candidacy for a master's degree at Bradley University, he states that some other schools did require internships in order to award a master's degree and therefore he "could be considered as a recipient of a 'scholarship' such as would be excludable under section 117 (a)(1)(A) of the Code." Following this statement he proceeds to argue only with respect to the amount received by him being representative of a fellowship grant within the meaning of section 117(a)(1)(B). *16 1438 In our view section 117(a)(1)(A) is not applicable to petitioner. Bradley University is an "educational institution," but Jacksonville State is not. (Section 151(e)(4)). Petitioner was not "at" Bradley University during 1963. Since petitioner's work at Jacksonville State was in no way connected with his being a candidate for a degree at Bradley University, section 117(b)(1) is not applicable to him. However, if this subsection were considered applicable to petitioner, since an internship was not required of candidates for the Master of Arts Degree in Psychology at Bradley University, we would still be confronted with the issue of whether the payments petitioner received were for "other services" within the meaning of that section. Our conclusion would be that those payments were for services for the reasons hereinafter discussed with respect to the provisions of section 117(b)(2). The primary arguments of both parties deal with whether the payments to petitioner by Jacksonville State are excludable as amounts paid to an individual who is not a candidate for a degree. Specifically, the parties center on the provision of section 1.117-4(c), Income Tax Regs., [3] that *17 amounts paid to an individual which represent compensation for past, present, or future employment services or represent payment for services which are subject to the direction or supervision of the grantor are not excludable under section 117. Apparently petitioner questions the validity of this regulation. In his brief he quotes from an article appearing in the Wall Street Journal of Wednesday, June 26, 1968, [4] and contends that since the amounts were excluded from the income of the taxpayers there involved the amount he received in 1963 from Jacksonville State should be excluded. The case referred to in the Wall Street Journal is obviously the opinion of the United States Court of Appeals for the Third Circuit in Johnson v. Bingler, 396 F. 2d 258 (C.A. 3, 1968). That case, however, was reversed by the United States Supreme Court in Bingler v. Johnson, 394 U.S. 741 (1969), and the Supreme Court specifically held section 1.117-4(c) of the Income Tax Regulations to be a valid interpretation of the statute.
*18 Petitioner's next argument is that the Government disposed, by settlement, of the case of another intern who was at Jacksonville State at the same time he was at Jacksonville State and therefore should be bound to take the same action in his case. However equitable this argument may seem to petitioner, it is not a correct statement of the law. Respondent is not bound to dispose of petitioner's case as he disposed of another intern's case even assuming that the situation of petitioner and the other 1439 intern were comparable, a fact which petitioner has failed to show. Finally, petitioner argues that he should be allowed to exclude the payments from income under the holdings of this Court in Aileene Evans, 34 T.C. 720 (1960), and William Wells, 40 T.C. 40 (1963). Both of these cases are distinguishable from petitioner's case. Aileene Evans involved an individual who was enrolled in a psychiatric nursing course at the University of Tennessee. The taxpayer in that case was only a student and did no work for the Department of Mental Health of Tennessee, the agency from which she received the stipend during the year in issue in that case. The question *19 there was whether the payment was for future services because of the taxpayer's agreement to accept employment with the State after completion of the course or to repay the amount she received as a stipend. Here the question is whether petitioner was rendering services for the Department of Mental Health of the State of Illinois for the money he received from that agency. Also see Lowell D. Ward, 55 T.C. 308, 311 (1920). The case of William Wells involved an individual who was a candidate for a Ph.D. in Clinical Psyschology at New York University. As a required part of the program leading to that degree, she worked part-time in a psychological training program at a Veterans Administration hospital. The program was planned and supervised jointly by the hospital and the University. The services the trainee in the Wells case provided to the hospital were limited and were primarily to obtain practical experience. Here there was no connection between the receipt by petitioner of his degree from Bradley University and the work he did at Jacksonville State. Bradley University in no way participated in the training program at Jacksonville State. Petitioner was a fulltime worker *20 at Jacksonville State and the services he performed were important to the services rendered by the hospital. Petitioner's services to Jacksonville State were subject to the supervision of Jacksonville State only and in no way supervised by Bradley University. Respondent relies on a number of cases involving payments by hospitals to individuals, the one most closely resembling the instant case being Irwin S. Anderson, 54 T.C. 1547 (1970). That case involved a taxpayer who for one-half the year there involved was an intern and for the other one-half year a resident physician at Freedmen's Hospital, Washington, D.C. We pointed out in that case that the provisions of section 1.117-4(c) of respondent's regulations had been specifically approved by the Supreme Court in Bingler v. Johnson, supra, and treated the question of whether the payments received by the taxpayer were compensation for employment or payments for services which were subject to the direction or supervision of the grantor as primarily one of fact. We concluded that although the intern and resident physician received valuable training by his service in a hospital and while the educational aspects *21 were important, the hospital's primary purpose was the care of patients and the taxpayer rendered services in the care of patients to the hospital and in return for these services received the stipend there involved. We pointed out a number of other facts which we considered to indicate the compensatory nature of the stipend received. In the instant case the evidence strongly indicates that the amount paid by Jacksonville State to petitioner was for the services he rendered to the hospital in assisting in the primary function of the hospital which was the treatment of mentally ill patients. We have set forth fairly detailed findings which support this conclusion. Certainly, the psychology interns at Jacksonville State receive valuable training just as do medical interns at a hospital. However, the psychology intern at Jacksonville State renders valuable services to the hospital and receives payment for those services. The services which petitioner rendered as an intern and for which he received payments were clearly subject to the direction or supervision of his employer, Jacksonville State. Therefore under the provisions of section 1.117-4(c) of respondent's regulations, the payments *22 petitioner received from Jacksonville State in 1963 are not excludable from his gross income under section 117. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodation; (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient. (b) Limitations. - (1) Individuals who are candidates for degrees. - In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph. (2) Individuals who are not candidates for degrees. - In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B). (A) Conditions for exclusion. - The grantor of the scholarship or fellowship grant is - (i) an organization described in section 501 (c)(3) which is exempt from tax under section 501(a), (ii) a foreign government, (iii) an international organization, or a binational or multi-national educational and cultural foundation or commission created or continued pursuant to the Mutual Educational and Cultural Exchange Act of 1961, or (iv) the United States, or an instrumentality or agency thereof, or a State, a territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia.↩
3. Sec. 1.117-4. Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of section 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or fututre employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant. 4. Petitioner quoted the following portion of the article in the Wall Street Journal of Wednesday, June 26, 1968: Students weren't taxed for living expenses they received from their employer. Westinghouse Electric Corp. gave three employees leaves of absence to complete work on their doctoral degrees. The company paid the employees' tuition and in addition gave each a monthly stipend based on his prior earnings and his family's needs. The recipients agreed to return to Westinghouse for at least two years after the completion of their studies. AU.S. district court agreed with the IRS in holding that the monthly stipends constituted taxable income because the students' work was controlled and directed by the company, even though the students contended this was not the case. This ruling was overturned on appeal. The appellate court said that the stipends were the sort normally associated with academic scholarships, and thus not taxable. The appellate court noted that its ruling was consistent with Congress' goal of excluding financial aid to students from taxation to encourage scholarship.↩