PAUL H. and BARBARA S. CHESMORE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Chesmore v. Commissioner
Docket No. 4281-69.
United States Tax Court
T.C. Memo 1974-271; 1974 Tax Ct. Memo LEXIS 51; 33 T.C.M. (CCH) 1226; T.C.M. (RIA) 740271; October 15, 1974, Filed. Paul H. Chesmore, pro se. Kemble White, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION. SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1966 and 1967 on the amounts of $45.00 and $1,275.64, respectively. One issue raised by the pleadings was conceded by respondent, leaving for our decision only whether amounts received by one of petitioners (a candidate for a Ph. D. degree in clinical psychology) from the Veterans' Administration (VA) as a psychology trainee during the years 1966 and 1967 are excludable from his taxable income under the provisions of section 117, I.R.C. 1954. [1]
*52 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in El Paso, Texas at the date of the filing of the petition in this case, filed a joint Federal income tax return for the calendar year 1967 with the district director of internal revenue at Baltimore, Maryland. Paul H. Chesmore (hereinafter referred to as petitioner) filed an individual Federal income tax return for the calendar year 1966 with the district director of internal revenue at Baltimore, Maryland. Petitioner began a Ph. D. program in clinical psychology at the Catholic University of America, Washington, D.C. in September 1964. In order to obtain a Ph. D degree in clinical psychology a candidate was required to complete 62 hours of course work and obtain at least 3800 hours of supervised clinical experience including a 1-year internship. Students were encouraged to obtain as many hours of clinical experience above the minimum requirements as possible. Catholic University also required each student candidate for the Ph. D. degree in clinical psychology to obtain clinical experience during each semester he was in residence. In order to *53 meet the requirement of clinical experience petitioner enrolled in a psychology training program with the VA. When petitioner applied to Catholic University for acceptance in the Ph. D. program in clinical psychology, he indicated that he would need financial assistance for completion of the program and asked if some scholarships were available. Catholic University had an agreement with the VA whereby a certain number of its students who entered the program as candidates for a Ph. D. degree in clinical psychology each year would be awarded stipends by the VA and would obtain their clinical experience in a VA hospital. Prior to petitioner's entrance into the Ph. D. program at Catholic University in September 1964, he was informed by that university that he had been assigned a VA stipend. Petitioner accepted this assignment and when he reported as a student at Catholic University in September 1964 was told by his faculty coordinator there that for his first semester he would spend three days a week in classroom work, would have one day free, and would spend the fifth day visiting various Veterans' installations within a radius of approximately 150 miles of Washington, D.C., which *54 visits would constitute his clinical experience for that semester. During the second semester beginning January 1, 1965 through June of 1965, petitioner spent three days a week in class and spent the remaining two days a week obtaining supervised clinical experience at the Elsmere Veterans' Administration Hospital near Wilmington, Delaware. During the summer of 1965 petitioner spent 39 hours a week obtaining supervised clinical experience at the Elsmere Veterans' Hospital. This period of time was spent primarily in acclimating petitioner to an environment where mental patients were treated and petitioner did some intelligence and personality testing. From September 1965 to June 1966 petitioner spent three days a week in classwork at Catholic University and the remaining two days in obtaining supervised clinical experience at the Veterans' Administration regional office in Baltimore, Maryland. Petitioner spent the summer of 1966 obtaining supervised clinical experience at Perry Point Veterans' Hospital on a 39-hour week basis. Beginning in September 1966 and continuing to September 1967 petitioner did his internship at Perry Point Veterans' Hospital. He treated two to *55 three patients per week and did some clinical testing of patients about every two weeks. All his clinical experiences were supervised by Training Director John McCarthy, Ph. D. During this time petitioner also commenced work on his Ph. D. dissertation. The topic of his dissertation was "The Effects of Punishment on the Attention Response Disposition of Prisoners and Schizophrenics." From September 1967 to June 1968 petitioner spent 39 hours a week at Perry Point Veterans' Hospital. During this period most of his time was spent completing his dissertation.He reviewed the literature, constructed the necessary apparatus, and evaluated approximately 80 subjects from Perry Point Hospital and the Baltimore City Jail. During this period he saw a few patients who were carried over from his third-year internship and conducted approximately one testing of one type or another per month. When petitioner first began his clinical training with the VA, every activity in which he engaged was in the presence of and under the supervision of a staff psychologist. If petitioner saw a patient, his supervisor would be there with him, and after he saw the patient he would spend another half hour *56 or more discussing what had transpired while he was seeing the patient with his supervisor. This procedure was followed for between 6 months and a year after petitioner began his clinical training. Thereafter, petitioner at times would see a patient without his supervisor being present. However, prior to seeing the patient petitioner would have a discussion with the psychologist who was his supervisor and perhaps be assigned some material to read prior to seeing the patient and then after he had seen the patient would spend approximately an hour discussing that patient and the notes he had taken while seeing the patient with the staff psychologist who was his supervisor.
Petitioner also attended staff meetings and participated in the discussions. These experiences, as his other training experiences, were supervised. Throughout his time with the VA until he received his Ph. D. degree in 1968 petitioner talked to his psychologist supervisor about all of his activities and he took no action or saw no patients without discussing the proposed activities with his supervisor and obtaining his authorization for the activities he proposed to take. During the time petitioner was in the *57 training program on the 39-hour a week basis, other than during the summer months, he participated in evening classes at Catholic University. His Ph. D. program was set up with the anticipation of his doing certain evening classwork during his clinical experience training. Petitioner had obtained approximately 5300 hours of clinical training experience when he received his Ph. D. degree in June of 1968. Sometime during the year of his internship he reached the 3800th minimum hours requirement. Petitioner's stipend was on a fixed yearly basis payable monthly and his stipend did not change dependent upon the number of hours he worked. There was an increase in the amount of the stipend from the first year to the second year and the second year to the third year and the third year to the fourth year. The minimum hours of supervised training experience required of first-year trainees was 500, and of second, third, and fourth-year trainees 1100 hours a year.
The circular published by the VA with respect to trainees specifically provided: Stipend trainees may, if they so desire or if it is requested by the Station Psychology Training Committee or Regional Psychology Training Committee, *58 secure additional hours of training experience at any given stipend level over and above the required minimum number of hours. The stipend trainee will not receive additional stipend funds for any additional number of training hours. The stipends provided for in the VA circular dated May 10, 1963 were $2700 for the first-year trainee, $3000 for the second year, $3500 for the third year and $4000 for the fourth year. [2]
However, under the VA psychology training program, it was permissible for a trainee in his third or fourth year to change from the stipend program to the assistantship program in certain circumstances. Occasionally a second-year student would be permitted to make this change. A student who changed to the assistantship program was required to have a scheduled assignment of a minimum of 24 hours per week and a maximum of 39 hours per week and was paid on an hourly basis. Although the amount received in this manner generally exceeded the stipend allowance, the 39-hour *59 maximum workweek was set so that the trainee would be a part-time employee. A full-time employee at the VA worked a 40-hour week. Petitioner was under the stipend program until September of 1967 at which time he changed to the assistantship program. There was no difference in the training received by a student under the stipend program and the assistantship program. However, under the assistantship program a trainee could receive payment for a maximum of approximately 2000 hours of work, whereas the stipend program provided for the same amount whether the required 1100 hours or additional hours were spent in the training facility in training. The hourly rate for a fourth-year student trainee under the assistantship program was based on the salary rate of the step-3 level of a GS-9. A fourth-year trainee under the assistantship program in 1967 and 1968 usually received approximately $6,700 per year and the salary of the lowest level staff psychologist at that time was approximately $12,000 per year.
The VA Psychological Service had its training program set up so that the movement of trainees back to a university or to some other station would not leave a void in the treatment *60 program and thereby affect patients' care. Although one of the stated purposes of the VA's program was to assist that administration in the recruitment of a sufficient number of well qualified staff psychologists, there was no requirement that a student trainee agree to work for the VA or any State or local hospital or give any commitment as to his work upon completion of the program. During the late sixties approximately one-third of the VA trainees accepted offers from the VA and worked for that administration after receiving their Ph. D. degrees and becoming qualified clinical psychologists. A relatively high percentage of the staff psychologists at the VA hospitals are individuals who were trained under the VA training program during the time they were working on their Ph. D. degree, although no statistics are kept as to the exact number that have come through this program or have been employed by the VA after receiving their Ph. D. degrees under other programs. There are other training programs for candidates for a Ph. D. degree in clinical psychology which carry stipends for the supervised clinical training work. However, there are some candidiates for the Ph. D. degree *61 in clinical psychology who do their required clinical work without any form of stipend or payment. Students in the VA stipend program do not receive annual leave or sick leave benefits. They cannot avail themselves of life insurance or health insurance available to VA employees nor can they participate in the retirement program. The funds from which they are paid are funds specifically designated in the VA budget for the student training program and not from funds for payment of employees. The VA does not withhold tax of any kind from the stipend paid to students in the psychological training program. The only criteria for change from one stipend level to another is successful performance as a trainee and successful completion of the work undertaken at the university at which the student is a candidate for the Ph. D. degree. None of the criteria associated with promotion or increases in compensation for a regular VA employee applies to a trainee under the stipend program. Petitioner on his Federal income tax return for the calendar year 1966 did not include in his taxable income any amount of the stipend he received from the VA. Petitioner reported total income for this *62 year from all sources of $1,288.41. Respondent in his notice of deficiency increased the amount reported by petitioner as income by $481.90 with the explanation that this amount represented compensation received from the VA. Petitioner on his joint Federal income tax return with his wife for the calendar year 1967 did not include in his taxable income any amount which he received from the VA. Respondent in his notice of deficiency increased petitioner's taxable income as reported by $7,620.60 with the explanation that this amount represented compensation received from the VA. OPINION Petitioner takes the position that the total amount he received from the VA during each of the years here involved is excludable from his taxable income as a scholarship or fellowship under the provisions of section 117(a) (1) (A) or (B) and (b) (1). [3] Petitioner argues that the payments were obviously in the nature of a scholarship and that the services which were required of him in his VA training were required of all candidates for a Ph. D. degree in clinical psychology and were therefore not excepted from the scholarship exclusion as payment for work in the nature of part-time employment. *63 Respondent at the trial *64 pointed out that the $481.90 which had been included in petitioner's taxable income for the year 1966 was that portion of petitioner's stipend allocable to the period after September 1966 when he began his third-year internship program and that the amount for 1967 included the total amount petitioner received for that year. Respondent stated that he took the position that his determination was correct on three legal theories: (1) That when petitioner began his internship program with 39 hours a week scheduled in the VA hospital, the stipend he received was compensation for full-time services and not a scholarship payment within the meaning of section 117(a) (1) (A); (2) that since only 3800 hours of supervised clinical experience was required for receipt of the Ph. D. degree, any hours in excess of the required 3800 was not work required of all candidates for the Ph. D. degree within the meaning of section 117(b) (1); and (3) that the work petitioner did was primarily for the benefit of the VA in that the VA, by the stipend program, was able to fill its staff psychologists positions and therefore the payments did not represent a scholarship or fellowship within the meaning of section *65 117(a) (1) (A) or (B) or under the decision in Bingler v. Johnson, 394 U.S. 741 (1969). Although in his brief respondent does not so state, he apparently included no portion of the amount received by petitioner for his first 2 years under the VA program because of our decision in William Wells, 40 T.C. 40 (1963), and his Rev. Rul. 65-59, 1965-1 C.B. 67 which stated in part: It was decided not to appeal the decisions in William and Doris Wells v. Commissioner, 40 T.C. 40 (1963), and Richard A. Anderson v. United States, 61-1 USTC P 9162 (1961), which are in conflict with Revenue Ruling 59-118. Accordingly, pending amendment of the Income Tax Regulations under section 117 of the Code, the Service will not litigate cases wherein amounts have been received under circumstances substantially identical to those in the Wells and Anderson cases and Revenue Ruling 59-118 will not be applied in disposing of cases involving stipends paid by the Veterans' Administration to graduate students while serving a training period as staff assistants at Veterans' Administration hospitals. In William Wells, supra, *66 we held that an amount received by a taxpayer who was a participant in the VA program in fulfillment of the requirement of New York University for receipt of a Ph. D. degree was excludable from income under section 117. The year involved in the Wells case was 1958. However, the facts of that case show that the VA program in effect for 1958 was in all substantial respects the same as the program in effect when petitioner began work on his Ph. D. degree in 1964 and during the years here in issue. The facts in that case also show that the requirement of New York University for supervised clinical training of its candidates for a Ph. D. degree in clinical psychology were substantially the same as the requirements of Catholic University. The facts in the Wells case show that the taxpayer was enrolled with the VA as a temporary part-time government employee paid for hours actually worked at hourly rates established with reference to the full-time pay level of Civil Service grades beginning with GS-5 for the first year and progressing to GS-7 and GS-9 in the third and fourth years. Also, the facts in the Wells case show that trainees submitted applications for employment on the Civil *67 Service form 57. However, in our view these facts which are different from those in the instant case do not cause our holding in that case to be inapplicable to the instant case. The taxpayer in the Wells case was a first-year trainee under the VA program. Insofar as here pertinent, the law governing scholarships has not changed between the time of our decision in Wells and the years involved in the instant case and there has been no substantive change in the regulations applicable in these cases.
However, respondent, while apparently recognizing that our decision in William Wells, supra, is directly dispositive of amounts received by petitioner prior to commencement of his internship in the fall of 1966, takes the position that that case does not apply to amounts received by petitioner from the VA thereafter. [4]
*68 In our view the one-year internship was as much a requirement for the Ph. D. degree as the clinical training experience for the first and second year. This internship year can come either in the third or fourth year, but in this case petitioner did take it in his third year. The internship here is in no way comparable to a medical internship performed by a person who has received an M.D. degree. The medical intern is already a doctor and performs substantial services for the hospital as a doctor, as is shown in numerous cases decided by this Court and other courts. Under the Ph. D. program the clinical training psychology internship is well prior to the receipt of the Ph. D. degree and the training is under the strictest form of supervision. The record here shows that the psychology trainee in no way replaces a staff psychologist and that his work is very strictly supervised. Also, in petitioner's case the amount he received from the VA for his full internship year was on a stipend basis and was not affected by the number of hours he spent at the facility.The medical intern is no longer a candidate for a degree while serving his internship. Therefore, the provisions of section *69 117(b) (1) are inapplicable to him. However, petitioner as a psychology intern in this case was still a candidate for the Ph. D. degree and section 117(b) (1) is precisely applicable to him. Therefore, the amount he received as a stipend for his internship year from September 1966 and 1967 is not eliminated from exclusion as a scholarship or stipend grant under section 117(b) (1). Therefore, if we conclude that petitioner's activities were such that the stipend was in the nature of a scholarship or fellowship, the amount is not excludable from the definition under the provisions of section 117(b) (1). From the facts we have set forth which show the strict supervision of petitioner's work, the little value of this work to the VA in replacement of work that might otherwise be done by staff psychologists, and the fact that there was no understanding either expressed or implied that petitioner as a psychology trainee would be in any way obligated to work for the VA after he received his degree, we conclude that the amounts which petitioner received for the internship year fall in the same category as the receipt of the amount in William Wells, supra. We are not impressed *70 with respondent's argument that no work beyond the 3800 hours was required of petitioner as a candidate for the Ph. D. degree since respondent has stipulated, and the facts show, that petitioner was required to have clinical training each of the 4 years while in the Ph. D. program at Catholic University and that he was required to have the internship year as a candidate for the degree. After concluding his internship year in September 1967 petitioner switched from the stipend to the assistantship program. Certainly, petitioner was still required to obtain clinical training in his fourth year and to attend classes at Catholic University in the evening. The nature of his duties somewhat changed and the facts are enough dissimilar that we consider a discussion of the period from September 1967 through the end of the year to warrant additional comment. It might be noted that the record shows that the reason for the 39-hour week for a trainee, as distinguished from a 40-hour or longer prescribed week was for the purpose of having psychology trainees be part-time employees. Regardless of respondent's comment about full-time employment, under the VA view psychology trainees such *71 as petitioner were never full-time workers. However, even more important here is the fact that beginning in September 1967 petitioner spent practically his entire time doing research on his dissertation, which research was of no more benefit to the VA or any particular VA hospital than it was to the profession of psychology in general. He was supervised in his work as a trainee and not as an employee. In our view the facts in this case with respect to petitioner's work on his dissertation bring it clearly within our holding in Frederick A. Bieberdorf, 60 T.C. 114, 118-119 (1973). Here, as in that case, there was no particular benefit to the VA from petitioner's work as distinguished from the academic community as a whole. The record here establishes, as it did in that case, that the program was primarily to provide training and not to obtain services and here as there petitioner's work which was primarily on his dissertation was not a quid pro quo for the amount he received.
Decision will be entered for petitioners . Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩
2. The amounts of these stipends were apparently increased prior to the taxable years here involved but other provisions of the VA psychology training program remain substantially unchanged. ↩
3. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e) (4)), or (B) as a fellowship grant, * * * (b) Limitations. - (1) Individuals who are candidates for degrees. - In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e) (4), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph. ↩
4. Respondent in his opening brief does not cite or mention William Wells, 40 T.C. 40 (1963). In his reply brief he makes the following statement: Following the loss of William Wells, 40 T.C. 40 (1963) and Anderson v. United States, No. 3-59-238 (D. Minn. 1960) involving students in their first years in Veterans Administration training programs the Service ruled in Rev. Rul. 65-59, 1965-1 C.B. 67 that the Service would not litigate cases substantially identical to Wells and Anderson. Although the basic training programs in the Wells and the Anderson cases are similar to the program in this case, the amounts in issue in Wells and Anderson were paid while the trainees were performing part-time services during their first year in the programs. In our case the amounts in issue were received while the taxpayer performed full-time services for a period of two years beginning with his third year in the program. The amounts received in this case were not received under circumstances substantially identical to those in the Wells and Anderson cases. While the existence of Rev. Rul. 65-591965-1 C.B. 67↩ may have prevented deficiency determinations in the area of VA training programs, it does not represent a conclusion by the respondent that all VA funded stipends are non-taxable.