PETER C. CHEN ans NATALIA L. CHEN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chen v. Commissioner
Docket No. 2071-78.
United States Tax Court
T.C. Memo 1979-407; 1979 Tax Ct. Memo LEXIS 118; 39 T.C.M. (CCH) 273; T.C.M. (RIA) 79407; September 26, 1979, Filed Peter C. Chen, pro se. Jerrome Duncan, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $2,906 in petitioners' 1974 Federal income tax. The sole issue for decision is whether a $13,000 National Institute of Health grant received by petitioner Peter C. Chen during the taxable year 1974 is excludible from his gross income under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing their petition herein, Peter C. Chen (hereinafter petitioner) and his wife Natalia *119 L. Chen, resided in Irvine, Calif.
During 1974 petitioner was a candidate for a Ph.D. in Biomedical Engineering at Rutgers University (Rutgers), New Brunswick, New Jersey. The Biomedical Engineering program is a joint program between the Electrical Engineering Department and the Medical School at Rutgers. In an effort to obtain financial aid while he worked on his Ph.D., petitioner contacted Dr. Walter Welkowitz, Ph.D., the chairman of the Electrical Engineering Department at Rutgers. Dr. Welkowitz, Ph.D., in turn contacted Dr. Victor Parsonnet, M.D., who was a professor at Rutgers Medical School and Director of Surgery at Newark Beth Israel Medical Center (Medical Center) in Newark, New Jersey. In June 1974 the Medical Center applied for an subsequently received a research grant from the National Institute of Health (N.I.H.) to study the electrophysiology of pacemaker electrodes in order to extend the life of pacemakers implanted in humans. In the N.I.H. grant application, Dr. Parsonnet, M.D., was listed as the research grant director. The application also indicated that the subject of the research was petitioner's thesis topic and the petitioner's role in the project would *120 be that of biomedical engineer. Because of petitioner's academic background, he was awarded $12,999.92 of the grant in 1974 by Dr. Parsonnet, M.D., to conduct research on extending the life of implanted pacemakers to satisfy the research requirement for his Ph.D. At Rutgers, research was required of all Ph.D. candidates. Rutgers, however, did not have the facilities petitioner needed to conduct experiments and do his research. Since the Medical Center was affiliated with Rutgers Medical School, petitioner was allowed to use the animal laboratory at the Medical Center to conduct his experiments. The experiments petitioner conducted were only upon animals. While petitioner used the Medical Center laboratory, he saw no hospital patients and provided no other services for the Medical Center. The laboratory petitioner used was in a different building than the hospital at the Medical Center. In addition, in a stipulated exhibit which is a letter dated March 4, 1975, Dr. Philip Katz, Ph.D., the Director of Biomedical Engineering at the Medical Center, stated that all of the research petitioner did at the Medical Center was directly related to petitioner's thesis, and that due to *121 the specific nature of petitioner's research petitioner did not occupy a position that would normally be filled at the Medical Center and upon completion of petitioner's research he would not be replaced. Petitioner was required to complete 24 Credit hours of research for his Ph.D. at Rutgers. During Spring semester in 1974, petitioner was enrolled in 6 credit hours of research and in the Fall semester in 1974 petitioner was enrolled in 3 credit hours of research. To receive credit toward his Ph.D. for his research, petitioner was required to spend 4 to 5 hours per week for each credit hour of research in which he was enrolled. Thus, during 1974 petitioner spent between 30 and 45 hours per week doing research at the Medical Center animal laboratory. However, petitioner had no regularly scheduled hours during which he was required by the Medical Center to be in the laboratory. Petitioner was allowed to use the laboratory on an hourly basis only when it was not being used by the Medical Center employees. Although petitioner's experiments were not graded individually, he was required to regularly report to his advisor in the Electrical Engineering Department at Rutgers, Dr. Fich, *122 Ph.D. However, as is typical in Ph.D. programs, petitioner would receive a grade of satisfactory or unsatisfactory on his entire research project. Petitioner was paid biweekly through the Medical Center payroll for purposes of administrative convenience. Both income tax and social security tax were withheld from the amount paid to petitioner. The $12,999.92 that petitioner received during 1974 from the Medical Center was charged to the N.I.H. grant by the Medical Center. On his Federal income tax return for 1974, petitioner exclude $13,000 [2] as a fellowship grant from the N.I.H. In his statutory notice of deficiency, respondent determined that the entire amount excluded by petitioner was taxable income. OPINION The sole issue for our decision is whether the $13,000 N.I.H. grant received by petitioner in 1974 is excludible from his gross income under section 117. *123 Section 117(a)(1) provides as a general rule that any amount received as a scholarship or Fellowship grant is excludible from gross income. The terms "scholarship" and "fellowship grant" are not defined in the statute. Section 1.117-3, Income Tax Regs., defines them as amounts paid to an individual to aid him in his studies or research. In addition, section 1.117-4(c)(2), Income Tax Regs., provides that amounts paid to "an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant * * * if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity" and the amount provided by the grantor for such purposes does not represent compensation or payment for services. Section 1.117-4(c)(2), Income Tax Regs., also provides that "neither the fact that the recipient is required to furnish *124 reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant." However, the terms "scholarship" and "fellowship grant" do not include any amount paid which "represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor." Sec. 1.117-4(c)(1), Income Tax Regs.
The Supreme Court sustained the validity of these regulations in Bingler v. Johnson, 394 U.S. 741 (1969). The Court stated that the definitions supplied by these regulations clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no strings" educational grants, with no requirement of any substantial quidproquo from the recipients. 394 U.S. at 751. Thus, under these regulations *125 the distinction between a scholarship or fellowship grant and a payment of compensation turns on whether the primary purpose for making the grant was to enable the recipient to pursue study or research to further his education or training in his individual capacity or whether the primary purpose was to compensate him for past, present, or future services. Adams v. Commissioner, 71 T.C. 477, 486 (1978); Carroll v. Commissioner, 63 T.C. 96, 103 (1973). In other words, was the recipient paid to work or paid to study? Zolnay v. Commissioner, 49 T.C. 389, 396 (1968). This is question of fact. Zolnay v. Commissioner, supra at 395; Wells v. Commissioner, 40 T.C. 40, 47 (1963); Bhalla v. Commissioner, 35 T.C. 13, 17 (1960). In addition to the requirement that the amounts received constitute a scholarship or fellowship grant, section 117(b) places a further limitation on the exclusion of such amounts from gross income. Section 117(b)(1) provides that in the case of a candidate for a degree *126 at an educational institution, as defined in section 151(e)(4), [3] no exclusion is followed for any amounts received which represent payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant. However, section 117(b)(1) also contains an exception to this limitation. Where teaching, research, or other services are required of all candidates for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment. The effect of this exception is to permit the exclusion from gross income of amounts received as a scholarship or fellowship grant where teaching, research, or other services are required of all candidates for a particular degree. Reese v. Commissioner, 45 T.C. 407, 414 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). *127 In the present case, respondent first argues that the primary purpose of the $13,000 N.I.H. grant petitioner received was to compensate him for services rendered to the Medical Center and, therefore, the grant was not excludible from petitioner's gross income in 1974 as a scholarship or fellowship grant under section 117(a)(1). Respondent's second argument is that research services were not required of all Ph.D. candidates at Rutgers and, hence, the limitation in section 117(b)(1) prevents petitioner from excluding the grant from gross income. Petitioner, on the other hand, maintains that the sole purpose of the grant he received was to enable him to perform experiments and conduct research necessary to satisfy the research requirement for his Ph.D. and since all Ph.D. candidates at Rutgers were required to do research, he is entitled to exclude the $13,000 N.I.H. grant he received from his gross income in 1974.
Based on the record as a whole, we find that the primary purpose of the $13,000 N.I.H. grant received by petitioner in 1974 was to enable him to further his education and not to compensate him for services rendered at the Medical Center. We do not believe that the Medical *128 Center required a substantial quidproquo from petitioner in return for the grant he received. We therefore conclude that this grant constituted a "fellowship grant" within the meaning of section 117(a)(1). [4] Our decision rests on several factors. To begin with, because of petitioner's academic background he was awarded the N.I.H. grant by Dr. Parsonnet, M.D., the research grant director, to conduct research on extending the life of implanted pacemakers to satisfy the research requirement for his Ph.D. In addition, the research petitioner conducted formed the basis of his thesis, the topic of which was the extension of the life of implanted pacemakers in humans. Thus, *129 it is clear that the primary purpose of the research petitioner conducted in the Medical Center laboratory was to satisfy the requirements for his Ph.D. and thereby further his education. That petitionerhs research may have been of some incidental benefit to the Medical Center does not destroy the essential character of petitioner's N.I.H. grant as a "fellowship grant." See Sec. 1.117-4(c)(2), Income Tax Regs.
In addition, the only reason petitioner used the animal laboratory at the Medical Center was because Rutgers did not have the facilities that petitioner needed to conduct experiments and do his research. While petitioner used the Medical Center animal laboratory he saw no hospital patients and provided no other services for the Medical Center. In fact, the animal laboratory was in a different building than the hospital at the Medical Center. Furthermore, in a letter dated March 4, 1975, Dr. Katz, Ph.D., the Director of Biomedical Engineering at the Medical Center, stated that all of the research petitioner did at the Medical Center was directly related to petitioner's thesis, and that due to the specific nature of petitioner's research petitioner *130 did not occupy a position that would normally be filled at the Medical Center and upon completion of petitioner's research he would not be replaced. Moreover, while petitioner spent between 30 and 45 hours per week doing research at the Medical Center laboratory, he had no regularly scheduled hours during which he was required by the Medical Center to be in the laboratory. On the contrary, petitioner was allowed to use the laboratory on an hourly basis only when it was not being used by the Medical Center employees. Finally, petitioner was plaid biweekly through the Medical Center payroll only for purposes of administrative convenience. The $12,999.92 that petitioner received during 1974 from the Medical Center was actually charged to the N.I.H. grant by the Medical Center. That the Medical Center withheld both income taxes and social security taxes from the amounts paid to petitioner does not by itself lead us to the conclusion that the payments the Medical Center made to petitioner were for services rendered. See Bhalla v. Commissioner, 35 T.C. at 17. Having concluded that the N.I.H. grant received by petitioner constituted a "fellowship grant" within *131 the meaning of section 117(a)(1), we turn to respondent's second argument that research services were not required of all Ph.D. candidates at Rutgers and, therefore, the limitation in section 117(b)(1) prevents petitioner from excluding the grant from his gross income. Under section 117(b)(1) a degree candidate is allowed no exclusion for amounts received which represent payment for research in the nature of part-time employment that is required for receipt of a fellowship grant. However, this same section contains an exception which permits exclusion of amounts received in payment for research when such research is required of all degree candidates. Although respondent recognizes that all Ph.D. candidates at Rutgers were required to do research, he claims that the exception to the section 117(b) limitation applies only when equivalent research is required of all candidates for a particular degree. Respondent further argues that this exception is inapplicable here because petitioner performed research services for the Medical Center in exchange for his grant, and, thus, petitioner's research was not equivalent to the reserach required of all other Ph.D. candidates at Rutgers *132 because it was in the nature of employment. Since we have already held that the primary purpose of the grant was to further petitioner's education and not to compensate him for services rendered to the Medical Center, we disagree with respondent's argument that petitioner's research was not equivalent to the research required of all other Ph.D. candidates at Rutgers. The N.I.H. grant that petitioner received simply gave him the opportunity to complete the research required of all Ph.D. candidates at Rutgers. Thus, we do not believe that petitioner's receipt of this grant created an inequality between petitioner's research and the research required of all other Ph.D. candidates at Rutgers. We, therefore, conclude that the exception to the limitation in section 117(b)(1) is applicable here and, consequently, petitioner is not prevented from excluding his "fellowship grant" from gross income because he was required to conduct research to obtain his Ph.D. at Rutgers. [5]
*133 Accordingly, we hold that the $13,000 N.I.H. grant received by petitioner during 1974 is excludible from his gross income under section 117. To reflect the foregoing, Decision will be entered for the petitioners. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. Although the amount of the N.I.H. grant received by petitioner during 1974 was actually $12,999.92, in claiming a $13,000 exclusion on his return it is obvious that petitioner merely rounded off the amount of the grant to the nearest dollar.↩
3. Sec. 151(e)(4) defines the term "educational institution" as one which "normally maintains a regular faculty and curriculum and normally has a regularly organized body of students in attendance." In Sec. 1.117-3(e), Income Tax Regs.↩, the term "candidate for a degree" is defined as an individual who is pursuing studies or conducting research to meet the requirements for an academic or professional degree, conferred by a college or university. It is not essential that such study or research be pursued or conducted at an educational institution which confers such a degree if the purpose thereof is to meet the requirements for a degree of a college or university which does confer such a degree. In the present case, the parties do not dispute the fact that Rutgers was an "educational institution" or that petitioner was a "candidate for a degree" at such institution.
4. The cases cited by respondent: Bingler v. Johnson, 394 U.S. 741 (1969); Zolnay v. Commissioner, 49 T.C. 389 (1968); Reese, Jr. v. Commissioner, 45 T.C. 407 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967), are distinguishable from the present case on their facts. In each of those cases the Court made a finding that the taxpayer received compensation in exchange for services, i.e., there was a quidproquo↩.
5. In support of his argument, respondent cites Sweet v. Commissioner, 40 T.C. 403 (1963). Although the Court in that case held that under sec. 117(b)(1) the grant received by the taxpayer was not excludible from gross income, it did so because the research performed by the taxpayer was not required of all other candidates for the degree he was seeking and because the taxpayer did not receive credit toward his degree for the research done. In the present case, it is clear that the research required of petitioner was also required of all other Ph.D. candidates at Rutgers and that petitioner received credit toward his Ph.D. for his research. Sweet v. Commissioner↩, is therefore distinguishable.