STEPHEN L. ZOLNAY AND ELIZABETH V. ZOLNAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4312-65. Filed January 23, 1968.

*John A. Dunkel*, for the petitioners.
*Richard M. Schwartz*, for the respondent.

390

OPINION

We are again faced with the troublesome question of the extent to which section 117 [3] applies to exclude payments received by a student who is a candidate for a degree and who receives payment for performing services which clearly have an academic coloration. There is no need to review the exhaustive analysis which we have already accorded the historical and legislative backdrop to section 117. See *Elmer L. Reese, Jr.*, 45 T.C. 407 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967), and the cases collected therein. Suffice it to say that the decided cases run the gamut of the full spectrum with all its shadings, making precisional line-drawing impossible. As a result, each case must turn upon its own particular facts and circumstances.[4] See *Chander P. Bhalla*, 35 T.C. 13, 17 (1960).

Initially, we can readily dispose of certain ancillary aspects of this case. Although petitioner was not "admitted to candidacy" until 1966, it has not been seriously contended that he was not a "candidate for a degree" during the taxable year involved herein, and we are satisfied that he meets the requirements of that phrase as used in section 117. See sec. 1.117–3(e), Income Tax Regs. Moreover, no issue has been

---

[3] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS

  (a) GENERAL RULE.—In the case of an individual, gross income does not include—
    (1) any amount received—
      (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or
      (B) as a fellowship grant, * * *

      \*      \*      \*      \*      \*      \*      \*

  (b) LIMITATIONS.—
    (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

[4] The American Council on Education, as amicus curiae, has submitted a most helpful brief, which attempts to distill the ground rules to be applied in cases of the type involved herein.

presented as to whether petitioner's services were "full-time" or "part-time," so that the nuances of potential distinctions in this area are not involved herein, except as a possible aid in interpreting the nature of the payments to petitioner. See pp. 397–398, *infra;* cf. *Elmer L. Reese, Jr., supra* at 415 fn. 4.

In *Elmer L. Reese, Jr., supra* at 412–413, we pointed out that section 117(b) was a *limitation* on section 117(a) and that the provision engrafted on section 117(b) by the Senate was an *exception* to that limitation. As a consequence, we ruled that the Senate amendment did not establish a mechanical test for exclusion and that the threshold inquiry in cases of the type involved herein is whether there is a scholarship or fellowship within the intendment of section 117(a). We confirmed the use of the primary-purpose test applied to the objective facts and circumstances of each situation.[5] Recognizing that the application of this test presented an acute problem where a dual condition existed—i.e., where the services were required to obtain the degree and were also a prerequisite to receiving the scholarship or fellowship—we sought to answer the basic question: Was the taxpayer paid to work or paid to study? We adopt the same test herein and direct our attention to the same basic question.

Petitioner's syllogism is not significantly different from that of the taxpayer in *Elmer L. Reese, Jr., supra:* (a) He was a candidate for a degree; (b) he did research related to obtaining his degree; (c) all candidates for such degree were required to do research; (d) *ergo*, he asserts that the requirements of section 117 were satisfied. The syllogism is premised on several erroneous assumptions. Close academic relationship of the services is not in and of itself sufficient. Nor is the fact that petitioner may have received the payments as a form of financial aid designed to enable him to continue his studies. Finally, the requirements of section 117 are not satisfied merely because all degree candidates are required to perform services.

It is with respect to the last element that we find a significant gap in petitioner's case. Section 117 obviously does not require that precisely the same services be rendered by all degree candidates. However, the requirement of *reasonably equivalent activity*, be it research or another type of service, seems to us to be, not only the touchstone of section 117(b), but an important element in determining the extent to which payments constitute a scholarship or fellowship in the first place. Admittedly, within limits, there may be quantitative and qualitative vari-

[5] In so doing, we noted the difficulties in applying that element of that test which relates to whether the payment is "primarily for the benefit of the grantor." Sec. 1.117–4(c)(2), Income Tax Regs.; *Elmer L. Reese, Jr.*, 45 T.C. 407, 411. For the same reasons which caused us not to consider this element in *Reese*, and for the further reason that it is unnecessary to our decision herein, we refrain from determining whether the U.S. Air Force or the National Aeronautics and Space Administration, as the sponsoring agency, or the university was the grantor and the primary beneficiary of petitioner's services.

ations among the students, but a reasonable identity of the work pattern of the degree candidates is an essential precondition. Petitioner has not presented any evidence as to amount of time spent in research by holders of graduate fellowships and we think it more than likely that the well over 40 hours weekly which petitioner put in was far in excess of the research time normally expected of degree candidates. Moreover, petitioner was *required* to put in a minimum of 40 hours under his appointment. Nor have we been favored with sufficient evidence to permit us to make a qualitative comparison of the research done by petitioner with that performed by other students. While an attempt was made to assign research projects to graduate students in light of their academic interests and dissertation objectives, the research required of petitioner was basically geared to outstanding contractual commitments relating to a specifically sponsored project.

In both *Chander P. Bhalla, supra,* and *Lawrence Spruch,* T.C. Memo. 1961–63, which respondent said he would apply in "substantially identical" fact situations (Rev. Rul. 63–250, 1963–2 C.B. 79), equivalent research was required of all degree candidates. We think that this factor and the fact that the taxpayers in those cases received substantially smaller monetary benefits were the critical distinguishing elements and that consequently petitioner cannot claim the protective umbrella of respondent's ruling.[6]

Aside from the gap in petitioner's case with respect to equivalent research, there are various additional considerations which lead us to the conclusion that, in the totality of the circumstances herein, petitioner was simply compensated for services rendered and did not receive an excludable fellowship within the meaning of section 117. These additional considerations include the following, listed without implication as to their order of importance or their relative qualitative significance:

(a) The services of petitioner were directly related to the fulfillment of a contractual commitment to a specifically sponsored project. *Howard Littman,* 42 T.C. 503 (1964).

(b) Petitioner's activities were subject to supervision, were geared to planned time schedules, and required specific progress reports. He was charged with considerable responsibility and his services played an essential and valuable part in enabling the lab to fulfill its commitments. *Wrobleski* v. *Bingler,* 161 F. Supp. 901 (W.D. Pa. 1958); *Ethel M. Bonn,* 34 T.C. 64 (1960); cf. *William Wells,* 40 T.C. 40 (1963).

(c) Petitioner was required to work 40 hours per week and in fact worked substantially longer hours. While we recognize that in

---

[6] Respondent has yet to implement his thrice announced intention to revise the regulations under sec. 117. See *Elmer L. Reese, Jr.,* 45 T.C. at 416 fn. 6.

the graduate area larger amounts of time devoted to research are often the order of the day, the consistent regularity of, and the lengthy time span during which petitioner performed his services, are another indication that he was paid to work rather than to study. Cf. *Aileene Evans*, 34 T.C. 720 (1960).

(d) Holders of graduate fellowships received substantially smaller stipends and were not directly compensated for the research work they performed at the lab. While section 117 imposes no limitation on the amount granted to a degree candidate, the very high rate of payment to petitioner cannot be ignored, particularly when compared to the rate of payment in the cases in which the taxpayer has received a favorable decision.[7] E.g., *Chander P. Bhalla, supra; Aileene Evans, supra.* Similarly, while there is no statutory limitation on time spent as a degree candidate and while the road to a doctoral degree in electrical engineering may be long and tedious, it is significant that petitioner has been engaged in "graduate study" since September 1960 (he received his master's degree in August 1962) and did not expect to get his doctor's degree until late in 1967. In this connection, we note that, according to a university bulletin, 3 to 4 years is all that is normally required to complete a doctorate in this field.

(e) Petitioner was uncertain whether his research would ultimately enter into his doctoral dissertation. He did not choose his dissertation topic until 1966 and it had not been completed as of the date of the trial herein (March 1967).

(f) Petitioner's application for a graduate fellowship was disapproved. Moreover, during a large part of the taxable year before us, he was on academic probation and therefore ineligible for such a fellowship.

(g) During the summer quarter of such taxable year, petitioner withdrew from the university but continued to perform his duties as usual at the lab.

(h) The university regarded petitioner as an employee. He was designated as a "regular" appointee and the payments to him were accounted for as "salary and wages," there being no authorization for outright grants in the sponsored research contracts on which he worked. The payments petitioner received were the equivalent of the salary of an associate professor. He was expected to render full-time services; was required to and did participate in the university retirement, medical, and life insurance programs; and had income taxes withheld from the amounts he received.[8] Petitioner was given regular

---

[7] We note that, in the case of non-degree candidates, Congress imposed a $300 per month and 36-month limitation. Sec. 117(b)(2). The absence of a similar limitation with respect to degree candidates does not preclude us from considering the level of monetary benefits as a factor to be taken into account.

[8] Admittedly, the fact of withholding standing alone is not determinative under sec. 117. *Chander P. Bhalla*, 35 T.C. at 17–18.

increases in the amounts paid to him, much greater than the incidental and sporadic increases given to holders of graduate fellowship grants.

It may well be that research work at, rather than outside, the lab provided petitioner with a more suitable arrangement under which he could, as a worker in the academic vineyards, combine his studies with activities capable of providing him with financial support. But the fact that he was able to kill two birds with one stone—in the sense that he could derive both direct educational and financial benefit—does not mean that he was being paid to study rather than to work. On all the facts and circumstances herein, we are led inescapably to the conclusion that the payments involved herein were received as taxable compensation for services rendered and not as a fellowship excludable under section 117.

To reflect the concessions of the parties,

*Decision will be entered under Rule 50.*