THOMAS MARK QUINN, Petitioner v. Commissioner of Internal Revenue, respondent
Quinn v. Commissioner
Docket No. 12801-78.
United States Tax Court
T.C. Memo 1980-412; 1980 Tax Ct. Memo LEXIS 169; 40 T.C.M. (CCH) 1320; T.C.M. (RIA) 80412; September 22, 1980, Filed Thomas Mark Quinn, pro se. Hugh P. Bonner, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: The respondent determined a deficiency of $574 in petitioner's Federal income tax for the year 1975. The issue for decision is whether petitioner is entitled to exclude the amount of $3,057.42 he received from Beth Israel Hospital during 1975 as a scholarship or fellowship grant. FINDINGS OF FACT Some of the facts have been stipulated. *170 The stipulation and the attached exhibits are incorporated herein by this reference. Petitioner resided in Brookline, Massachusetts, at the time the petition in this case was filed. In September, 1972, petitioner began a Ph.D. program in clinical psychology at George Washington University, Washington, D.C. In order to obtain a Ph.D. in clinical psychology, petitioner was required: to complete specific academic courses; to participate in a full year pre-doctoral internship in clinical psychology; and to write a doctoral dissertation. In June, 1975, petitioner completed the academic courses required of candidates for a Ph.D. in clinical psychology at George Washington University. To satisfy the requirement of participation in a full year pre-doctoral internship training program, petitioner applied to Beth Israel Hospital, Boston, Massachusetts (hereinafter, the "Hospital"), an institution which provides the required internship training program. His application was accepted in February, 1975, and petitioner was appointed as an intern in psychology in the Hospital's Department of Psychiatry. The internship also carried with it a courtesy appointment to the Harvard Medical *171 School as a Clinical Fellow in Psychology in the Department of Psychiatry. The pre-doctoral internship training program at the Hospital is approved by the American Psychological Association ("APA") and is funded by a Mental Health Training Grant awarded to the Hospital by the National Institutes of Health, an instrumentality of the United States. The APA requires every candidate for the Ph.D. degree in clinical psychology to participate in a full year predoctoral internship training program at an institution whose internship training program the APA has approved. Participation in such a program is also a standard requirement for any student seeking a Ph.D. in clinical psychology at George Washington University. One of the functions of the Hospital, in addition to providing medical care and treating illness, is the training of individuals to engage in clinical psychology. This function is performed primarily by the Psychiatry Unit of the Hospital's Psychiatry Department. The Hospital's pre-doctoral internship program in clinical psychology is designed to provide training in four basic clinical activities: psychotherapy, assessment by interview, consultation and diagnostic testing.
*172 From July 1, 1975, through June 30, 1976, petitioner participated in the Hospital's pre-doctoral internship program in clinical psychology. During the period of his internship, petitioner was required to be at the Hospital five days a week, with at least eight hours a day being devoted to participation in the internship program. Petitioner was also required to devote additional time to participation in the internship program during one day each week, when he was on call in the Hospital's emergency Room from 8:00 a.m. until 6:00 p.m. When petitioner commenced his participation in the Hospital's internship program, he was assigned to work with six or seven patients who were undergoing psychotherapy. These patients were from the Hospital's outpatient clinic and had been previously evaluated by members of the Hospital's staff. Petitioner usually saw each patient on a weekly basis for individual therapy sessions lasting approximately 50 minutes.For every two hours of psychotherapy that he provided, petitioner received one hour of supervision. Throughout the course of his internship, petitioner was on call in the Hospital's Emergency Room one day a week. During this time he was required *173 to aid in the assessment of the psychological needs of people who came to the Emergency Room. Initially, petitioner observed third-year psychiatric residents conducting interviews. As petitioner gained experience he conducted these interviews himself. Petitioner would then make recommendations concerning the patient's psychological needs. All recommendations made by petitioner were closely supervised.
At various times during his internship, petitioner administered psychological tests, usually to children who were having difficulty in school. Petitioner scored the results of the tests, discussed the results with a supervisor, and submitted written reports on the people tested to his supervisor. An additional aspect of the internship entailed joint interviews with outpatients. Petitioner and a supervisor would jointly interview outpatients of the Hospital in order to assess their psychological functioning. The results of the interviews were discussed afterwards for purposes of making suitable recommendations. Petitioner would then write reports on each person interviewed. These reports were in turn submitted to the Director of Outpatient Psychotherapy for review and appropriate *174 disposition. During the course of his internship petitioner attended various seminars and meetings in order to further his training in, and knowledge of, clinical psychology. Among these included: weekly four-hour seminars on emergency room procedures and psychotropic drugs; a weekly diagnostic testing seminar; and weekly intake assessment meetings where petitioner received training from a seminar staff member in the techniques of intake assessment. the training that petitioner received and the clinical functions that he performed during his internship were necessary to his training in clinical psychology. All of the activities engaged in by petitioner at the Hospital during the period of his internship were supervised and reviewed and were not performed by him autonomously. During the period of his internship petitioner received a $6,000 stipend from the Hospital. A training grant awarded to the Hospital by the National Institutes of Mental Health was the source of $3,900 of that stipend. The amount of petitioner's stipend was not dependent on his financial need since all interns in clinical psychology at the Hospital received the same amount. The stipends paid to the interns *175 have no relationship to past services at the Hospital or expected employment in the future at the Hospital. Of the $6,000 stipend, $3,057.42 was paid to petitioner in 1975. From this amount, the Hospital withheld $362.72 in Federal income tax, $178.86 in Federal Insurance Contributions Act tax, and $92.64 in Massachusetts income tax. During his internship petitioner also received a two-week paid vacation and health insurance coverage provided by the Hospital. During the period of petitioner's internship the salary paid by the Hospital to a beginning staff psychologist having a Ph.D. was $15,000. While petitioner was an intern at the Hospital, he continued to pay tuition to George Washington University as an enrolled student. In September of 1979, petitioner was awarded a Ph.D. in clinical psychology from George Washington University. OPINION Amounts received as a scholarship of fellowship grant are excluded from gross income under section 117(a). [1] In the instant case, because petitioner's performance of services under the internship program was a condition to his receiving *176 a Ph.D. in clinical psychology, section 117(b)(1) does not automatically render section 117(a) inoperative. On the other hand, the fact that the services were required of all Ph.D. candidates does not, in and of itself, resolve the issue of whether the payments at issue constitute an excludable scholarship or fellowship. The payments still must have the characteristics of a scholarship or fellowship grant. Brubakken v. Commissioner, 67 T.C. 249 (1976); Reese v. Commissioner, 45 T.C. 407 (1966), affd. per curiam, 373 F.2d 742 (4th Cir. 1967). The regulations under section 117 state that if any "amount represents either compensation for past, present, or future employment services or represents payments for services which are subject to the direction or supervision of the grantor," such amount does not qualify for exclusion under section 117. Section 1.117-4(c)(1), Income Tax Regs.The Supreme Court, in upholding the validity of the regulations, *177 made the following comment with respect to the foregoing provision: The thrust of the provision dealing with compensation is that bargained-for payments, given only as a "quo" in return for the quid of services rendered--whether past, present, or future--should not be excludable from income as "scholarship" funds. Bingler v. Johnson, 394 U.S. 741, 757, 758 (1969). Thus, the analytical distinction drawn for purposes of section 117 is between relatively disinterested payments made primarily for the purpose of furthering the recipient's education and payments intended to reward or induce the recipient's performance of services which benefit the payor. See, e.g., Turem v. Commissioner, 54 T.C. 1494, 1505 (1970). Initially, we note that even though $3,900 of the stipend is attributable to a National Institutes of Health grant, the Hospital is still considered the grantor of the entire payment. Bailey v. Commissioner, 60 T.C. 447 (1973); Fisher v. Commissioner, 56 T.C. 1201 (1971). We believe that resolution *178 of the issue herein will turn on whether the services petitioner rendered can, in the context of the Hospital's day-to-day operations, be considered substantial or significant. In order to be excludable under section 117, payments must comport with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Bingler v. Johnson, 394 U.S. at 751. Thus, if the recipient's services substantially benefit the payor, payments given therefore should accordingly be deemed to be compensation for said services. This mode of analysis is in accord with that enunciated in the legion of cases involving section 117; e.g., Bailey v. Commissioner, 60 T.C. 447 (1973); Zolnay v. Commissioner, 49 T.C. 389 (1968). After a careful review of the facts presented in this record, we cannot conclude that the services petitioner rendered pursuant to the intern program were so insignificant as to have little or *179 no value to the Hospital. There is ample evidence demonstrating that petitioner's services lessened the Hospital's workload and enabled it to provide better health care. [2] We do not feel that the benefits received by the Hospital, insofar as its function of caring and treating patients is concerned, can be characterized as merely minimal or incidental. The activities which petitioner engaged in materially benefited the Hospital since a substantial portion of petitioner's time and effort was directed toward the care and treatment of patients. Among these activities were included individual sessions, [3] diagnostic testing, [4] emergency room coverage, intake assessments and joint interviews. However, in an effort to minimize the extent and importance of the above activities, *180 petitioner has stressed that all of the activities were conducted under close supervision. The import of such fact, if proved, would be that the supervisory burdens imposed on the regular Hospital staff by virtue of the intern program would far outweigh and thus negate any benefits otherwise resulting therefrom. We do not agree with the factual characterization offered by petitioner that his activities were so strictly supervised as to render the value thereof to be insignificant. Brubakken v. Commissioner, 67 T.C. at 257; Fisher v. Commissioner, 56 T.C. at 1212. [5] Petitioner's duties entailed the performance of activities which were necessary for the effective day-to-day operation of the Hospital. Although his activities were subject to review and supervision, the supervision was not all-encompassing and constant. Thus, in the individual therapy sessions with patients from *181 the outpatient clinic the ratio of therapy to supervision thereof was 2 to 1.As part of the Hospital's program for emergency room coverage, petitioner engaged in assessment interviews. These interviews were eventually conducted solely by petitioner and provided the basis for individual recommendations he would make. The administering and scoring of psychological testing as well as the reports submitted in connection therewith clearly benefited the Hospital; it appears that such did not subject the Hospital to any great supervisory burden. [6] In addition, after his outpatient interviews (conducted jointly with a supervisor), petitioner also submitted written recommendations based on post-interview discussions with his supervisor. We also note that another aspect of the stipend which did not comport with the traditional characteristics of a fellowship was the absence of any correlation between *182 the payments and the petitioner's financial need; all of the interns were paid a uniform amount. Weinberg v. Commissioner, 64 T.C. 771 (1975). Further indicative of an employment relationship were petitioner's two-week paid vacation and his health insurance coverage.[7]
It is true that the training petitioner received from the internship, in terms of his development as a clinical psychologist, was substantial. Indeed, from the petitioner's standpoint such was the primary reason for engaging in the internship program. Nevertheless, those training aspects do not take away from the fact that the Hospital derived significant benefits from petitioner's activities. That the petitioner *183 also derived substantial edification during his internship is not determinative. Proskey v. Commissioner, 51 T.C. 918 (1969). All in all, we believe that the internship's practicerelated activities, despite the supervisory burdens which resulted therefrom, made a substantial contribution to the care and treatment of the Hospital's patients. In the absence of petitioner's accomplishing these tasks, other psychologytrained members of the Hospital staff would have been needed to fulfill them. By the time petitioner commenced his internship he had completed all of the academic requirements for the Ph.D. program in clinical psychology. Given this education, it cannot be said that petitioner was such a neophyte in clinical psychology that his services effected merely a marginal contribution to the Hospital's care and treatment effort. See Brubakken, 67 T.C. at 256.
Since the primary purpose of the stipend was to compensate petitioner for the services he performed, we hold that the payments at issue were not excludable from income under section 117.
Decision *184 will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, except as otherwise specifically indicated.↩
2. See Zonderman v. Commissioner, T.C. Memo. 1977-2↩. 3. A progress report which the Hospital submitted in March of 1974 in conjunction with its renewal application for a Mental Health Training Grant stated that trainees would be assigned to 8 - 12 cases in this area. ↩
4. The report mentioned in the preceding note also stated that diagnostic testing would encompass approximately 25 cases.↩
5. Compare Chesmore v. Commissioner, T.C. Memo. 1974-271↩, where this Court found that the taxpayer's work was strictly supervised and had minimal value in terms of replacing work which would otherwise have to be performed by staff psychologists.
6. The report contained in the training grant application stated that the trainee would handle approximately 25 cases in this facet of the internship with "supervision individually tailored."↩
7. In this regard we feel that the withholding of Federal and state taxes is not particularly telling since such could be interpreted as a precautionary measure taken by the Hospital vis-a-vis a characteristic of an employment relationship. Compare Steiman v. Commissioner, 56 T.C. 1350, 1356 (1971), with Brubakken v. Commissioner, 67 T.C. 249, 259↩ (1976).