KENNETH T. LANGE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lange v. Commissioner
Docket No. 9465-78.
United States Tax Court
T.C. Memo 1981-217; 1981 Tax Ct. Memo LEXIS 519; 41 T.C.M. (CCH) 1421; T.C.M. (RIA) 81217; May 4, 1981. Kenneth T. Lange, pro se. Theodore, F. Brill, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 308 deficiency in petitioner's 1975 income tax. The issue for decision is whether payments made by Antioch College constitute a scholarship within the meaning of section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time he filed his petition, petitioner resided in Miami, Florida. Between 1974 and 1977 petitioner attended Antioch School of Law, (the "School") located in Washington, *520 D.C. The School is affiliated with Antioch College which is located in Yellow Springs, Ohio. The curriculum at the School emphasizes clinical as well as classroom training. All candidates for a Juris Doctor degree must participate in the School's clinical program. The clinical program is arranged as a separate department of the School and is referred to as the Urban Law Institute (the "Institute"). The School requires each student to complete 30 units of clinical work prior to graduation. The School fully integrates the clinical and classroom experience by requiring each student to devote a fixed number of hours each semester to the Institute. [2] This participation begins in the student's first semester. The Institute provides free and low-cost legal services for residents of the District of Columbia. Its staff consists of practicing attorneys who serve as adjunct professors in the School. These attorneys supervise the students' clinical activities which include client counseling, research and litigation. At the beginning of each year the School's financial aid department assesses *521 the financial needs of its students. Based on this assessment, the School puts together a financial aid package to meet each student's needs. The School apportions and distributes each student's aid throughout the school year. For convenience these distributions are associated with the student's participation in the clinical program. The total amount received by the student is based solely on need and does not reflect payment for participating in the clinical program. Although all students participate in the clinical program, only those with financial need receive a stipend. Moreover, among those receiving aid, the amount of the stipend differs depending upon the particular student's needs. In 1975 petitioner received $ 1,981 from Antioch College based on financial need. Petitioner received a W-2 Form from Antioch College indicating the payment of this amount, from which no taxes were withheld. On his 1975 return, petitioner did not report as income the $ 1,981 received from Antioch College. In his statutory notice, respondent determined that the excluded amount was includible income. OPINION The issue for decision is whether petitioner is entitled to exclude from *522 gross income $ 1,981 received from Antioch College in 1975. Petitioner contends that this amount represents a scholarship excludible under section 117. Respondent asserts that petitioner has failed to meet his burden of proving such payments are excludible under that section. For the reasons stated below we hold for petitioner. Section 117(a)(1) excludes from gross income amounts received as a scholarship at an educational institution. Under section 117(b)(1) this exclusion does not apply to "any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship * * *." In those situations in which "teaching, research, or other services are required of all candidates * * * for a particular degree as a condition to receiving such degree" such services are not regarded as part-time employment. Sec. 117(b)(1). There are two prongs to the issue before us: (1) Did the amount received by petitioner constitute a "scholarship" within the meaning of section 117(a)(1), see Olick v. Commissioner, 73 T.C. 479, 484 (1979); and (2) if the previous question is answered *523 in the affirmative, were the payments nevertheless compensation for services in the nature of part-time employment within the meaning of the exception contained in section 117(b)(1), see Steiman v. Commissioner, 56 T.C. 1350, 1354-1355 (1971). Both prongs involve questions of fact and depend upon the particular circumstances of each case. Petitioner bears the burden of proof on these factual inquiries. Rule 142(a), Tax Court Rules of Practice and Procedure.
As to the first prong, the test is one of primary purpose, i.e., were the payments to petitioner designed to further his education or to compensate him for services rendered to the Institute. Olick v. Commissioner, supra at 486. In short, was he paid to work or study? See Steiman, supra at 1355. In this case we find ourselves confronted with less than an ideal record. [3] Nonetheless, from our evaluation of what is before us, we are satisfied that the primary purpose, if not the sole purpose, of the payments was educational. *524 The inseparable relationship of petitioner's academic training and his activities at the Institute indicates the educational nature of those activities. See Olick v. Commissioner, supra at 486; Rev. Rul. 64-54, 1964-1 C.B. (Part I) 81. The clinical program is an integral part of the School's approach to legal education. The Institute provides a living classroom in which students learn and develop their legal skills. Petitioner's participation in the Institute was mandated solely by the School's curriculum without any apparent regard to the needs or requirements of the Institute. Furthermore, the educational purpose of the payments is highlighted by the disparate treatment of the student body. See Reese v. Commissioner, 45 T.C. 407, 415 (1966), affd. 373 F. 2d 742 (4th Cir. 1967); Zolnay v. Commissioner, 49 T.C. 389, 397 (1968); Bhalla v. Commissioner, 35 T.C. 13, 15 (1960). Although all students were required to participate in the clinical program, only those with financial need received payments from the School. If the payments were primarily intended to compensate students, *525 like petitioner, for their services, there is no reason why similar payments were not received be the entire student body. Finally, the absence of any nexus between the amount received by petitioner and his clinical activities dispels the inference that he was paid for services provided. [4] Petitioner's stipend was based solely on the school's determination that he needed financial aid to pursue his studies. [5] It is these types of payments that comport with our ordinary understanding of the term "scholarship." See Adams v. Commissioner, 71 T.C. 477, 487 (1978); Steiman v. Commissioner, supra at 1355-1356; Jamieson v. Commissioner, 51 T.C. 635, 639 (1969). [6]
*526 As to the second prong of the issue before us, we find that the amount received by petitioner was not compensation for services within the meaning of section 117(b)(1). As previously stated, petitioner's stipend reflected the School's assessment of his financial need, it did not represent compensation for his work at the Institute. This is highlighted by the fact that other students who equally participated in the Institute's activities did not receive payments. See Jamieson v. Commissioner, 51 T.C. 635, 639-640 (1969); sec. 1.117-2(a)(1), Income Tax Regs.[7] Simply stated, an employment-like relationship did not exist between petitioner and the grantor of the stipend. Moreover, the record is devoid of any present or future benefits derived by the School in exchange for these payments. See note 5, supra. *527 To reflect the foregoing, Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Students prepare time sheets to prove the number of hours spent at the Institute.↩
3. The major evidence introduced in this case was petitioner's testimony. We found petitioner to be a credible and forthright witness. Since respondent offered no evidence to dispel or clarify petitioner's testimony, our findings of fact reflect that testimony.↩
4. We do not attach significance to the fact that the distribution of scholarship funds was in some way associated with a student's participation in the clinical program. Our inquiry pertains to the purpose of the payment and not its mode of distribution. Although the mode of distribution may reflect the payment's purpose, the evidence before us is insufficient to draw that conclusion. Moreover, we attach no significance to the issuance of a W-2 Form by Antioch College. Cf. Bhalla v. Commissioner, 35 T.C. 13, 17↩ (1960) (no significance attached to withholdings of income tax). 5. The School did not elicit a "substantial quidproquo" from petitioner in exchange for the stipend. The record is devoid of any substantial present or future benefits derived by the School in exchange for these payments. Sec. 1.117-4(c), Income Tax Regs. They were "relatively disinterested, 'no-strings' educational grants." Bingler v. Johnson, 394 U.S. 741, 751↩ (1969). Of course, payment of the stipend depended on petitioner's status as a student. This is to be expected. The fact that petitioner's status as a student, in turn, depended on the successful completion of his course load including the clinical requirements does not alter our view of the payments. 6. See also Larsen v. Commissioner, T.C. Memo. 1973-239 (1973); Worthington v. Commissioner, T.C. Memo. 1972-111 (1972), affd. 476 F. 2d 589↩ (10th Cir. 1973).
7. Sec. 1.117-2 Limitations--(a) Individuals who are candidates for degrees--(1) In general↩. Under the limitations provided by section 117(b)(1) in the case of an individual who is a candidate for a degree at an educational institution, the exclusion from gross income shall not apply (except as otherwise provided in subparagraph (2) of this paragraph) to that portion of any amount received as payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant. Payments for such part-time employment shall be included in the gross income of the recipient in an amount determined by reference to the rate of compensation ordinarily paid for similar services performed by an individual who is not the recipient of a scholarship or a fellowship grant. * * *